**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:20-cv-22234-JEM

LINCO ENTERPRISES, INC.

    Plaintiff,

v.

OLEG FIRER, EZ CAPITAL FUND, LLC,
STAR CAPITAL MANAGEMENT, LLC,
UNIFIED ADVANCE, LLC, STAR EQUITIES, LLC,
and IGOR "GARY" GELMAN

    Defendants.
_____/

**ORDER[1] GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Linco Enterprises, Inc. ("Linco"), filed its initial complaint against Oleg Firer ("Firer"), EZ Capital Fund, L.L.C. ("EZ Capital"), Star Capital Management, L.L.C. ("Star Capital"), Unified Advance, L.L.C. ("Unified Advance"), Star Equities, L.L.C. ("Star Equities"), and Igor "Gary" Gelman ("Gelman") (collectively, "Defendants") on May 29, 2020. ECF No. [1]. Therein, Plaintiff alleged that Defendants violated federal and state securities laws in operating an "illicit fundraising and money management scheme." *Id.* at 1. Defendants filed their First Motion to Dismiss (the "First Motion to Dismiss") on June 19, 2020 arguing that Plaintiff failed to state a claim for relief that was plausible on its face, that at least one of Plaintiff's claims was time-barred, and that Plaintiff relied on conclusory and contradictory statements. ECF No. [16] at 1–2. On

---

[1] The District Court Judge referred "[a]ll matters relating to Defendants' Motion to Dismiss Plaintiff's Amended Compliant and Incorporated Memorandum of Law" to the undersigned on October 15, 2020 to "take all necessary and proper action as required by law." ECF No. [25]. Thereafter on November 12, 2020, the parties consented to the jurisdiction of the undersigned as it relates to the Motion to Dismiss. ECF No. [28].

1

July 6, 2020, Plaintiffs filed their Amended Complaint. ECF No. [17]. The Court denied Defendants' Motion to Dismiss as moot given that an amended pleading had been filed. ECF No. [18].

Thereafter, Defendants filed the instant Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law (the "Motion" or "Motion to Dismiss"). ECF No. [19]. Plaintiff filed its Opposition to Defendants' Motion to Dismiss the Amended Complaint. ECF No. [21]. Defendants filed their Reply Memorandum in Support of the Motion to Dismiss. ECF No. [22]. A hearing on the Motion to Dismiss took place on January 28, 2021 before undersigned. ECF No. [45].

**I.      BACKGROUND**

Sergey Khazarov ("Khazarov"), the principal of Linco, met Defendant Gelman on an international flight in mid-November 2016. ECF No. [17] ¶ 10. He was twenty-two years old at the time. *Id.* In December of 2016, the two reunited again in Moscow, Russia to meet Defendant Gelman's business partner, Defendant Firer. *Id.* A "lukewarm relationship" developed among the three. *Id.* The Amended Complaint alleges that from March to November 2017, Defendant Firer and Defendant Gelman "solicited Plaintiff's presence in Miami" and sold various security investments to Linco through transactions that took place in Florida. *Id.* ¶¶ 10–11.

On March 27, 2017 Plaintiff signed EZ Capital's operating agreement thereby acquiring a 5% interest in EZ Capital, a Florida limited liability company. *Id.* ¶ 11; ECF No. [19] at 3. Plaintiff alleges that the operating agreement contained a statement, that Defendant Gelman and Star Equities each had contributed $1,500,000.00, which was untrue. ECF No. [17] ¶ 11. Plaintiff alleges that he relied on this misrepresentation in purchasing his 5% interest in EZ Capital for $300,000.00. *Id.*

In July 26, 2017, Plaintiff purchased another 5% interest in EZ Capital for $300,000.00 and signed an amendment to the operating agreement which stated that Defendant Gelman and Star Equities each contributed $1,500,000.00. *Id.* ¶ 16. Plaintiff again states that he relied upon this misrepresentation. *Id.* The Amended Complaint alleges that it was not until April 2020 when Plaintiff learned that these purported contributions by Defendants Gelman and Star Equities were false. *Id.*

On March 27, 2017, Plaintiff acquired a 10% interest in Unified Advance by signing Unified Advance's operating agreement. *Id.* ¶ 18; ECF No. [19] at 4. Plaintiff alleges that the operating agreement contained a statement that Gelman and Star Equities each had contributed $750,000.00, which was untrue. ECF No. [17] ¶ 18. Plaintiff alleges that he relied on this statement in purchasing his 10% interest in Unified Advance for $300,000.00. *Id.* Linco received twenty-two periodic monthly reports on its Unified Advance investment portfolio. *Id.* ¶ 20.

Plaintiff alleges that on May 4, 2019, Defendant Gelman made a "series of misrepresentations to trigger Plaintiff to sell its interest at a loss." *Id.* Specifically, Plaintiff states that Gelman informed him that: (1) Unified Advance was in financial ruin, (2) the expenses and ongoing obligations of Unified Advance greatly exceeded its income, (3) Unified Advance could not last much longer under the current conditions, and (4) that if Plaintiff did not withdraw funds "in short order" then there would be no funds to recover in a month or so and all of Plaintiff's investment would be lost. *Id.* Plaintiff states that in early June of 2019, Khazarov met Defendants Gelman and Firer in a vehicle in Moscow to sign what was allegedly a buy-back agreement for $150,000.00 of Plaintiff's interest in Unified Advance. *Id.* ¶ 21. Plaintiff alleges that Defendants refused to provide a copy of this agreement despite repeated demands by Khazarov. *Id.* Plaintiff states that on June 12, 2019, EZ Capital wired $150,000.00 to Plaintiff's bank account. *Id.*

Plaintiff also alleges that when Defendant Firer was appointed as Grenada's Ambassador to Russia, Defendant Firer and Defendant Gelman "scavenged Moscow, Miami, and Odessa for investors into 'Project Boeuf,' supposedly for a development of a small hotel under Hilton's Curio™ brand, on a 3.67 acre parcel located on Parc a Boeuf in the St. George Parish, Grenada." *Id.* ¶ 22. Defendant Firer and Defendant Gelman made representations that the project was expected to imminently receive a license by Grenada's Citizenship by Investment Program which would raise funds for furtherance of land improvement. *Id.* Beginning in September 2017, Defendant Firer and Defendant Gelman held meetings at the Grenadian Embassy in Moscow where Plaintiff alleges they "massage[d]" into his mind the "sky-high profits that would shower Plaintiff if it were to invest into the 'Project Boeuf.'" *Id.* ¶ 23. From September 2017 to July 2020, Defendant Firer and Plaintiff met between fifteen and twenty times at the Grenadian Embassy in Moscow to discuss the business affairs of EZ Capital, Unified Advance, Star Capital and VG Financing. *Id.*

On November 9, 2017, Plaintiff acquired a 16.6% interest in Star Capital by signing Star Capital's L.L.C. Agreement. *Id.* ¶ 24. Plaintiff states that it was never shown a copy of Star Capital's operating agreement. *Id.* Plaintiff alleges that the L.L.C. agreement contained a statement that Defendant Gelman and Star Equities each had contributed $1,158,000.00, which was untrue. *Id.* Plaintiff alleges that he relied on this misrepresentation in purchasing his 16.6% interest in Star Capital for $464,000.00. *Id.* Plaintiff alleges it recurrently asked Star Capital's Board regarding Project Boeuf and whether Hilton had approved the Curio™ brand hotel or whether Grenada had approved Project Boeuf for the Citizenship by Investment Program license. *Id.* ¶ 25. Plaintiff states that its questions were repeatedly deflected by stating that they were "in the works," "about to happen," or imminent. *Id.*

4

Plaintiff alleges that on August 7, 2019, Defendant Gelman called Khazarov and informed him that the entirety of Star Capital's interest in Project Boeuf was being purchased at a discount by an individual or entity known as "Roma," the landowner of the 3.67 acre parcel of land on Grooms Beach related to Project Boeuf. *Id.* ¶ 26. Khazarov texted Defendant Gelman on August 23, 2019 at 8:15 PM, "Got news regarding hotel?" to which Defendant Gelman responded "Yes . . . Roma got the agreement signed, he is sending original docs to [Firer], once he receive [sic] it back original documents he will send the wire." *Id.* Plaintiff alleges that these were false statements "intended to trigger Plaintiff's sale of interest in Star Capital." *Id.* On or about September 12, 2019 Star Capital, Star Equities, and Plaintiff signed a "Class B Common Share Purchase Agreement" through which Star Equities purchased back Plaintiff's 16.6% interest in Star Capital for $420,000.00. *Id.* Plaintiff alleges that the Class B Common Share Purchase Agreement contained a falsehood known to Defendants that "[t]he Company [Star Capital Management LLC] owns equity in the 159,865 square foot (3.67 acre) parcel located on Parc a Boeuf (a.k.a. 'Grooms Beach') in St. George's Parish, Grenada (the "Project Beaouf [sic]")." *Id.* ¶ 27. Plaintiff states that Star Capital never owned equity in the land parcel. *Id.* This falsehood became apparent to Plaintiff when a Grenadian company "Star Development Limited–in which Star Capital never was or is a member –acquired the Grooms Beach land parcels" and recorded their deeds. *Id.*

Based on these facts, Plaintiffs allege seven counts against Defendants.

1. Count I: Violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and Rule 10b-5, 17 C.F.R. § 240.10b-5, against EZ Capital, Star Capital, Star Equities and Unified Advance.

2. Count II: Liability of Controlling Persons, 15 U.S.C. § 78t, against Star Equities, Gelman, and Firer.

5

3. Violation of the Florida Securities Investor Protection Act, Fla. Stat. §§ 517.011 *et seq.*, against all Defendants.

4. Enforcement of Right to Inspection of Books and Records, Fla. Stat. § 605.0411, against Star Capital and Unified Advance.

5. Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203 *et seq.*, against EZ Capital, Star Capital, and Unified Advance.

6. Fraudulent Misrepresentation, against EZ Capital, Star Capital, Unified Advance, Gelman, and Star Equities.

7. Judicial Dissolution of EZ Capital Fund L.L.C. and Appointment of a Receiver, Fla. Stat. §§ 605.0702, 605.0703.

ECF No. [17].

## II.   LEGAL STANDARD

When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, a court need not accept plaintiff's legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]o survive a motion to dismiss, a complaint must contain sufficient *factual* matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (emphasis added) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading is facially plausible when the plaintiff states enough facts for the court to draw a "reasonable inference" that the defendant is liable for the alleged conduct. *Id.* The factual allegations must provide more than a "sheer possibility." *Id.*

When alleging fraud, a plaintiff must comply with the heightened pleading standard in Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In order to satisfy Rule 9(b), a plaintiff's complaint should include: (1) the statements that were made; (2) the time

6

and place of each such statement and the person responsible for making each statement; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1159 (11th Cir. 2019).

### III. ANALYSIS

#### A. Counts I, II, III, V, VI Do Not Meet The Heightened Pleading Requirements For Rule 10b-5 Claims Predicated On Fraud.

Count I of Plaintiff's Amended Complaint alleges violations under the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b-5; and 17 C.F.R. § 240.10b-5. In the Eleventh Circuit, a private plaintiff bringing an action under Rule 10b-5 must show:

> (1) a material misrepresentation or omission; (2) scienter—a wrongful state of mind; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance . . . as transaction causation; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss.

*Meyer v. Greene*, 710 F.3d 1189, 1194 (11th Cir. 2013) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)) (internal quotation marks omitted). A misrepresentation or omission is material if, "in the light of the facts existing at the time," a "reasonable investor, in the exercise of due care, would have been misled by it." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011) (citation omitted). In other words, materiality depends on whether a "substantial likelihood" exists that a "reasonable investor" would have viewed a misrepresentation or omission as "significantly alter[ing] the 'total mix' of information made available." *S.E.C. v. Morgan Keegan & Co.*, 678 F.3d 1233, 1245 (11th Cir. 2012) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

"To survive a motion to dismiss, a claim brought under Rule 10b–5 must satisfy (1) the federal notice pleading requirements; (2) the special fraud pleading requirements found in Federal

7

Rule of Civil Procedure 9(b) . . . ; and (3) the additional pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") . . . ." *FindWhat*, 658 F.3d at 1296 (internal citations omitted). Pursuant to federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A]ll well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (quoting *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1273 n.1 (11th Cir.1999)). Under Federal Rule of Civil Procedure 9(b), for complaints alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Finally, under the PSLRA "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). If these PSLRA pleading requirements are not satisfied, the court "shall" dismiss the complaint. 15 U.S.C. § 78u–4(b)(3)(A).

Plaintiff alleges various misrepresentations in the Amended Complaint; however, it fails to allege these misrepresentations with the requisite particularity. In the Amended Complaint, Plaintiff states that he invested in EZ Capital, Unified Advance, and Star Capital in reliance on untrue statements of material fact, or misrepresentations—the content of which was that Gelman and Star Equities had invested certain amounts of capital in each. ECF No. [17] ¶¶ 11, 16, 18, 24. Rule 9(b) requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the

person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud. *Garfield,* 466 F.3d at 1262; *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001). Notably, the "[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1012 (11th Cir.2005) (per curiam).

The Amended Complaint does specifically indicate the misstatements made and persons who made them—that Gelman and Star Equities had invested specific amounts in EZ Capital, Unified Advance, and Star Capital—the time of such misstatements—on March 27, 2017, July 26, 2017, and November 9, 2017—the place of such the misstatements—on the operating agreements and amendments to the operating agreements—and what the Defendants obtained as a result of the fraud—investments by Plaintiff. *Id.* However, Plaintiff does not explain the basis for believing that these were misrepresentations, required under the PSLRA. *See* 15 U.S.C. § 78u–4(b)(1) ("the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."). The purpose of particularity pleading is to alert the defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior." *In re Takata Airbag Prod. Liab. Litig.*, 462 F. Supp. 3d 1304, 1313 (S.D. Fla. 2020). This failure warrants the dismissal of this Count. The Court notes, as it did at the hearing, that Plaintiffs may very well have ample evidence to support their claim, however, some of that evidence discussed at the hearing must be plead in order for the Amended Complaint to survive dismissal.

Because this Court finds that Plaintiff fails to plead a claim for securities fraud, the remaining counts fare no better. In Count II, Plaintiff alleges liability of controlling persons based on the claims in Count I. ECF No. [1] ¶ 42. However, because the claims in Count I fail, those in Count II necessarily fail as well. *See Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 919 (11th Cir. 2020) ("If a plaintiff cannot state a claim for securities fraud under § 10(b) and Rule 10b-5, his 'control-person' claims under § 20(a) 'necessarily fail as well.'" (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008))); *Garfield,* 466 F.3d at 1261 (the success of plaintiff's controlling persons claim "turns on the resolution of its claims under Section 10b and Rule 10b–5").

Count III must also be dismissed because therein Plaintiff alleges a Florida Securities Investor Protection Act claim, which, like Count I, fails to be plead with the requisite specificity. *See Barnett v. Blane*, No. 11-14345-CIV, 2013 WL 1001963, at *2 (S.D. Fla. Mar. 13, 2013) ("A Florida–Securities–and–Investor–Protection–Act claim must be pleaded with heightened specificity because it is essentially a claim for fraud."); *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1046 (11th Cir. 1987) ("The Florida statutory requirements are identical to Rule 10b-5, . . . except that the scienter requirement under Florida law is satisfied by a showing of mere negligence . . .").

Count V alleges violation of FDUTPA. ECF No. [17] ¶ 57. The Amended Complaint states that EZ Capital, Star Capital, and Unified Advance were deceptive or unfair. *Id.* ¶¶ 55–56. In the alternative, Plaintiff states that Counts I and III operate as an "implied FDUTPA predicate." *Id.* This claim must also be dismissed. First, this is a claim based upon allegations of fraudulent misrepresentations and "'[t]he particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law.'" *Fox*

*v. Loews Corp.*, 309 F. Supp. 3d 1241, 1251 (S.D. Fla. 2018) (quoting *Llado–Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011)). For the same reasons set forth above, as to Count I and III, Plaintiff has not plead this claim with the required particularity. Second, because the undersigned has already determined that Counts I and III must be dismissed, they cannot serve as implied FDUTPA predicates. Count V must be dismissed.

Finally, Count VI must be dismissed as well. Count VI alleges fraudulent misrepresentation against EZ Capital, Star Capital, Unified Advance, Gelman, and Star Equities. ECF No. [17] ¶¶ 60–64. These claims must again be plead under the heightened Rule 9(b) standard. The Court has already established that Plaintiff failed to plead the misrepresentations to this standard and therefore Count VI must be dismissed as well. As the Court noted above and at the hearing, its is likely that Plaintiff may be able to plead with the particularity required in its next amendment. However, this Amended Complaint did not satisfy the requirements.

> **B.** The Court Declines To Exercise Its Supplemental Jurisdiction Over Counts IV and VII As To This Amended Complaint**.**

As an initial matter, the Court finds that if the fraud counts were not dismissed, the Court would have supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over both state law claims in Counts IV and VII. Count IV in the Complaint seeks enforcement of the right to inspection of books and records under Fla. Stat. § 605.0411, against Star Capital and Unified Advance. ECF No. [17] ¶ 51. Section 605.0411(1) of the Florida Statutes states that "[i]f a limited liability company does not allow a member, manger, or other person who complies with § 605.0410(2)(a), (3)(a), (3)(b), or (4), as applicable, to inspect and copy any records required by that section [605.0410] to be available for inspection, *the circuit court* in the county where the limited liability company's principal office is or was last located . . . *may* summarily order inspection and copying of the records demanded . . . ." (emphasis added). In Count VII, Plaintiff seeks the judicial

11

dissolution of EZ Capital and the appointment of a receiver under Fla. Stat. § 605.0702 and Fla. Stat. § 605.0703.  Under Fla. Stat. § 605.0702, "(1) A *circuit court may* dissolve a limited liability company" under certain circumstances.  Similarly, under Fla. Stat. § 605.0703, "(4) [i]n a proceeding under § 605.0702, the court may, upon a showing of sufficient merit to warrant such a remedy: (a) Appoint a receiver or custodian under § 605.0703.

As to both Counts, Defendants argue that the Court does not have jurisdiction over these claims because the statutes specify that "the circuit court" is the body that may order inspection and copying, then this Court does not have jurisdiction.  ECF No. [19] at 14, 19–20.  Defendants cite to *ITsavvy LLC v. IT Savvy, LLC,* No. 617CV955ORL31TBS, 2017 WL 8812725, at *6 n.5 (M.D. Fla. Dec. 12, 2017) which interpreted similar Florida Statutes §§ 605.0702(1) and 605.0703 as vesting the state circuit court, and not the federal court, with jurisdiction to dissolve an LLC. *Id.*  Plaintiff counters that this Court has jurisdiction and relies on the case of *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1109 (3d Cir. 1995), which held that "a state simply has no power to divest a federal court of its constitutionally or congressionally conferred subject matter jurisdiction has been settled law for nearly a century."  ECF No. [21] at 13–14.  Plaintiffs maintain that federal court in Florida have allowed claims for judicial dissolution to proceed.  *See White v. Ideagear, LLC*, 2015 WL 1927504, at *3 (M.D. Fla. Apr. 28, 2015); *Findling v. Bisaria*, 12-CV-80118-DMM, 2013 WL 12139328, at *3 (S.D. Fla. May 15, 2013).

Plaintiff is correct that these may come before the Court through the doctrine of supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a) (. . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . .).  In the same way that the Court has supplemental

12

jurisdiction over these state law claims in Counts IV and VII, because they form part of the same case or controversy, the Court's jurisdiction could extend to these state law claims. Based on the allegations in the Amended Complaint, the state law claims rely on the same exact facts as the federal law claims. *Id.* ¶¶ 31, 41, 50, 65.

Defendants argument relies on the theory that these state statutes disallow jurisdiction by a federal court. Defendants rely on *ITsavvy*, which noted that not only were there no grounds for dissolution of an LLC in that case, "[e]ven if any of these grounds were present . . . the statute vests the state circuit court, not the federal court, with jurisdiction to dissolve an LLC. 2017 WL 8812725, at *6 n.5. Upon a reading the Florida statutes in question, Fla. Stat. §§ 605.0411 and 605.0702, the language is permissive in stating that "the circuit court . . . *may* summarily order inspection and copying of the records demanded," and "[a] circuit court *may* dissolve" an LLC. (emphasis added). There is nothing limiting within the statutes indicating that they cannot be brought in federal court, as *ITSavvy* suggests. The District Court of New Jersey made a similar finding in *K.N. v. Gloucester City Bd. of Educ.*, when it held that Plaintiff could be bring a state claim directly in federal court as "[t]he basis of allowing these claims to be heard initially in federal court is the permissive language of the statue, which states those claims 'may' be brought in [state court]." 2019 WL 4024806, at *2 (D.N.J. Aug. 27, 2019).

Further, the Court finds that although very little authority exists as to this issue, there is some authority in this Circuit to allow Counts IV and VII to proceed in federal court. Indeed, other federal courts in the Middle District of Florida have exercised jurisdiction over the dissolution of a company under the state statute. *White v. Ideagear, LLC*, No. 8:14-CV-2975-T-26MAP, 2015 WL 1927504, at *3 (M.D. Fla. Apr. 28, 2015) (permitting a claim for dissolution to proceed in federal court as long as plaintiffs specified in what capacity they sought judicial dissolution);

13

*Rossini v. Muller*, No. 606CV123ORL28DAB, 2006 WL 8448542, at *1–2 (M.D. Fla. Feb. 15, 2006) (federal court would have been able to determine the issue of dissolution and receivership had there been proper diversity of citizenship to bring the case under the federal court's subject matter jurisdiction). In this District, Judge Middlebrooks, in *Findling v. Bisaria*, dismissed a plaintiff's complaint without prejudice finding there was no diversity of citizenship; however, his order states that he would permit a claim for dissolution under the state law to go forward, provided the parties show diversity, and as long as the plaintiff could show that he was a member of the LLC he was trying to dissolve. *Findling v. Bisaria*, No. 12-CV-80118-DMM, 2013 WL 12139328, at *3 (S.D. Fla. May 15, 2013).

However, because the Court is dismissing the fraud counts here, it will not exercise jurisdiction over these counts. *Rivas v. Bank of New York Mellon*, 777 F. App'x 958, 965 (11th Cir. 2019) (quoting 28 U.S.C. § 1367 (c)). "[T]he Supreme Court has recognized that, 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claim.'" *Bruce v. U.S. Bank Nat'l Ass'n*, 770 F. App'x 960, 966 (11th Cir. 2019) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Should the fraud claims be properly replead these counts could survive under the theory of supplemental jurisdiction.

Defendants make a second argument as to the dismissal of Count IV. Defendants argue that Plaintiff would only be allowed to inspect the books and records of Star Capital and Unified Advance under Fla. Stat. § 605.0411 is if it were a member, manger, or disassociated member. ECF No. [19] at 15; *see* § 605.0410(2)(a), (3)(a), (3)(b), or (4). Under Fla Stat. § 605.0602, there are fifteen ways in which one may become a disassociated member, and Defendants state that Plaintiffs fall into none of these categories. ECF No. [19] at 15. Plaintiff states this is contrary to

the District Court's decision in *Silver Crown Investments, LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316, 1330 (S.D. Fla. 2018) which did not require such a detailed pleading. ECF No. [21] at 15. The Court finds that in *Silver Crown* there was never a question that Plaintiffs were still members of the LLC from which they are seeking inspection of books and records. *Silver Crown*, 349 F. Supp. 3d at 1322, 1330–31. This Court holds that to the extent Plaintiffs seek to inspect the books and records under Fla. Stat. § 605.0411, Plaintiff would need to show, pursuant to the statute, how Plaintiff qualifies as a member, manager, or one of the fifteen ways in which one may become a disassociated member of Star Capital or Unified Advance.

### IV. CONCLUSION

For the reasons noted above, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss the Amended Complaint, ECF No. [19], is **GRANTED WITHOUT PREJUDICE.** Plaintiff has ten (10) days to file its an amended pleading.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day March, 2021.

JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE