UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 1:20-cv-22234- MARTINEZ-BECERRA

LINCO ENTERPRISES, INC.

    Plaintiff,

v.

OLEG FIRER, EZ CAPITAL FUND, LLC,
STAR CAPITAL MANAGEMENT, LLC,
And STAR EQUITIES, LLC,

    Defendants.

_____/

OLEG FIRER, EZ CAPITAL FUND, LLC,
STAR CAPITAL MANAGEMENT, LLC,
And STAR EQUITIES, LLC,

    Counter-Plaintiffs,

v.

LINCO ENTERPRISES, INC,

    Counter-Defendant,

_____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Defendants / Counter-Plaintiffs OLEG FIRER ("**Firer**"), EZ CAPITAL FUND, LLC, ("**EZ Capital**"), STAR CAPITAL MANAGEMENT, LLC, ("**Star Capital**"), STAR EQUITIES, LLC, ("**Star Equities**") (collectively "**Defendants**"), by and through their undersigned counsel, and pursuant to the Federal Rules of Civil Procedure and the Local Rules and Procedures for the

1

Southern District of Florida, hereby move this Court to enter summary judgment in favor of Defendants and against Plaintiff / Counter-Defendant LINCO ENTERPRISES, INC ("**Linco**"), and in support, state as follows:

## INTRODUCTION

Summary judgment should be granted in Defendants' favor, and against Linco, as follows:

*First*, summary judgment should be granted as to Linco's claims in Counts I, III, and IV in that any alleged misrepresentation as to capital contribution amounts was not the proximate cause of any loss or damages to Linco;

*Second*, if the above claims are not dismissed, then summary judgment should be granted as to part of Linco's claims in Counts I, III, and IV, and the part of Defendants' defenses thereto, in that there is no genuine issue of material fact that the plain text of Unified Advance's and EZ Capital's operating agreements specifically allowed Star Equities' and non-party Gary Gelman's ("**Gelman**") contributions to Unified Advance and EZ Capital to be deemed as the amounts identified on the operating agreements as contributed; and

*Third*, summary judgment should be granted as to Linco's claim in Count V for inspection of books and records of Star Capital because Linco is not a dissociated member of Star Capital.

## STATMENT OF FACTS

For the relevant material facts, Defendants refer the Court to the contemporaneously filed Defendants' Local Rule 56.1 Statement of Material Facts That Are Not Genuinely Disputed (ECF. No. 89) ("**DSMF**"), which was filed with this Motion.

## STANDARD OF REVIEW

Summary judgment must be granted where there is no triable issue of material fact and the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Walker v.*

*Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990). Once the moving party establishes that there is no genuine issue of material fact, the non-moving party has the burden of presenting specific facts showing that material issues are in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990). "Rather, its responses, either by affidavits or otherwise as provided by the rule, must set forth specific facts showing that there is a genuine issue for trial." *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.*; *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("mere conclusions and unsupported factual allegations are legally insufficient to defeat summary judgment.").

**I.       LINCO CANNOT DEMONSTRATE LOSS CAUSATION OR PROXIMATE CAUSE.**

The crux of Linco's claims in Counts I, III, and V is that each seeks to assert claims against EZ Capital, Star Equities, Star Capital, and/or Firer based on (1) alleged misrepresentations in March and June 2017, regarding the amounts of capital contributions identified as made by Star Equities and Gelman to Unified Advance and EZ Capital (ECF. No. 59 ¶¶ 35-36, 101), and (2) alleged misrepresentations in November 2017, regarding the amounts of capital contributions identified as made by Star Equities and Gelman to Star Capital. *Id* ¶¶ 63-64, 101.

Count I alleges a violation of Rule 10b-5 of the Securities Exchange Act of 1934. (ECF No. 59 at Count I). Count III alleges a violation of Florida Securities Investor's Protection Act, Fla. Stat.§§ 517.011 *et. seq.* (ECF No. 59 at Count III). Count V alleges a common law claim for fraudulent misrepresentation. (ECF No. 59 at Count V).

With respect to Counts I and III, because a securities claim under the Florida statute is "nearly identical to a securities fraud claim under Rule 10-5 . . . Florida courts will look to

3

interpretations of the federal securities laws for guidance in interpreting Florida's securities laws." *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1147 (Fla. 3d DCA 2001); *Messer v. E.F. Hutton & Co.,* 847 F.2d 673, 676 (11th Cir.1988).

A private plaintiff bringing an action under Rule 10b-5 must show: "(1) a material misrepresentation or omission; (2) scienter—a wrongful state of mind; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance, "often referred to in cases involving public securities markets (fraud-on-the-market cases) as transaction causation"; (5) economic loss; and (6) "loss causation, i.e., a causal connection between the material misrepresentation and the loss." *Meyer v. Greene*, 710 F.3d 1189, 1194 (11th Cir. 2013). Of import, both claims require a showing of loss causation.

"To succeed in a securities fraud case, a plaintiff must demonstrate that he suffered economic loss caused by the material misrepresentation or omission charged to the defendant." *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1330 (11th Cir. 2020). "It is insufficient to show that Defendants induced the Plaintiff[ ] into deals that subsequently went bad." *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1330–31 (11th Cir. 2020). "If the investment decision is induced by misstatements or omissions that are material and that are relied on by the claimant, but are not the proximate reason for the pecuniary loss, recovery ... is not permitted." *Id* at 1331.

"The loss causation element of a Rule 10b–5 claim requires that the defendant's fraud be both the but-for and proximate cause of the plaintiff's later losses." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1309 (11th Cir. 2011). "However, the plaintiff need not show that the defendant's misconduct was the "sole and exclusive cause" of his injury; he need only show that the defendant's act was a "substantial" or "significant contributing cause." *Id.*

"[I]f the particular loss complained of is caused by supervening general market forces or other factors unrelated to the defendant's misconduct that operate to reduce the value of the plaintiff's securities, the plaintiff is precluded from recovery under Rule 10b–5." *Bruschi v. Brown*, 876 F.2d 1526, 1530 (11th Cir. 1989); *Hubbard v. BankAtlantic Bancorp, Inc.,* 688 F.3d 713, 729 (11th Cir. 2012) (holding that loss causation was not established because the plaintiff had not offered facts showing how the misrepresentations were a substantial factor contributing to the alleged losses while the loss of stock prices was tied to the collapse of the real estate market).  Loss causation requires proof that the alleged fraud is the "proximate cause of the plaintiff's later losses."  *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1333 (11th Cir. 2018) (citing *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1309 (11th Cir. 2011).

With respect to Count V, to prevail on a claim for fraudulent misrepresentation, the misrepresentation must be the proximate cause of the damage claimed. *Gonzalez v. Garcia*, 913 So. 2d 735, 736 (Fla. 3d DCA 2005).  *Sherban v. Richardson*, 445 So. 2d 1147, 1148 (Fla. 4th DCA 1984) ("Finding that appellee suffered no damages proximately caused by the representation as to ownership and that in any event there was no reliance to her detriment, we reverse the final judgment").  A defendant's acts or omissions cannot be too tenuous to constitute proximate cause. *Expressair Cargo Servs., Inc. v. ZFour, Inc.*, 738 So. 2d 1008 (Fla. 3d DCA 1999)("defendant's misconduct was too tenuous to constitute a proximate cause of the plaintiff's damages").

In this case, any alleged misrepresentations in 2017 about capital contributions to EZ Capital, Unified Advance, and Star Capital were not the proximate cause of any loss or damages to Linco because Linco's losses were actually due to independent factors, or supervening events such as:  the Covid-19 pandemic, lapse of time, and Linco's own demands for return of its funds.

5

### 1. EZ Capital.

Linco alleges that it was in March 2017, that the capital contribution misrepresentations occurred, which is almost three years before Linco commenced this case in May 2020. DSMF ¶ 16. Linco does not dispute that EZ Capital had no assets other than VG Financing (DSMF ¶ 18) that EZ Capital did not conduct any other than the operations of VG Financing (DSMF ¶ 19), and that income from VG Financing was EZ Capital's sole source of income (DSMF ¶ 20). Linco testified that its membership interest in EZ Capital now has no value because there is no market for the membership interest, as there was a decline in VGF's business. DSMF ¶ 22. Specifically, Linco testified that its chances of getting money out of its EZ Capital contribution are "slim" because the operations of VGF Financing are now such that: "they don't have the website anymore. They sold all the furniture off. They practically -- they have fired almost all the employees and one of the investors brought a lawsuit against them and got a ruling, that of recovering 70 percent of the amount that was invested or advanced to the merchants. And on top of that, a few weeks ago they stopped sending investor reports to me." DSMF ¶ 21. In short, Linco's loss or damages from its contribution to EZ Capital was substantially, primarily caused by the decline in the business of VG Financing, the sole asset and only source of income of EZ Capital, almost 3 years *after* any alleged misrepresentation regarding capital contributions. Accordingly, any alleged acts or omissions with respect to the capital contributions identified in March 2017, was not the cause or proximate cause of any loss suffered by Linco.

Furthermore, as the alleged acts and omissions occurred in 2017 and the loss was almost 3 years later, the lapse of time between the misrepresentations and the loss removes any possible proximate cause of any loss or damages allegations with respect to Linco. *Sapssov v. Health Mgmt. Assocs., Inc.,* 22 F. Supp. 3d 1210 (M.D. Fla. 2014), aff'd, 608 F. App'x 855, 1229 (11th

Cir. 2015) (evaluating loss causation in a fraud-on-the-market case) (finding that for 11 months, "[s]uch a large temporal lapse removes the segment from the realm of relevance in determining loss causation"). Thus, it is undisputed that any alleged acts or omissions by Defendants with respect to capital contributions were not the cause of Linco's loss, and summary judgment must be entered in favor of Defendants at to Counts I, III, and V with respect to the claims against Defendants involving EZ Capital.

### 2. Unified Advance.

Any loss resulting from Linco's contribution to Unified Advance was caused by Linco voluntarily seeking its money back from Unified Advance. Linco again alleges that it was in March 2017, that the misrepresentations regarding capital contributions were made. ECF No. 59 ¶¶ 2, 98; DSMF ¶ 28. It is undisputed that Linco signed a Settlement Agreement and Release on June 4, 2019, pursuant to which Linco received $150,000.00 and sold its membership interest in Unified Advance. DSMF ¶¶ 34, 35. Linco testified that it signed the Settlement Agreement and Release "[b]ecause I wanted to get my money back. I don't know how to answer this, I just wanted to get it back." DSMF ¶¶ 36. Linco assumed the loss in value of its interest when it decided to voluntarily sell its interest and agreed to the amounts in the Settlement Agreement and Release, because it just wanted to get the money back, and Defendants cannot act as insurers to Linco's loss in value. *Meyer*, 710 F.3d at 1196 ("the loss causation requirement ensures that the federal securities laws do not 'becom[e] a system of investor insurance that reimburses investors for any decline in the value of their investments'"). In *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1331 (11th Cir. 2020), the Eleventh Circuit found that no act or omission by the appellees was the cause of any loss because it was the surrender of a security, not its purchase, that generated the loss incurred and there was no act or omission by the defendants in that regard. *Id.* Any loss by

Linco in Unified Advance was caused by *Linco's* desire to just get Linco's money back by signing the Settlement Agreement and Release, and not any act or omission by Defendants.

Additionally, Linco sold its interest in Unified Advance in June 2019. DSMF ¶¶ 35, 36. Thus, approximately two years transpired between (1) Defendants' alleged acts and omissions and Linco contributing its amounts to Unified Advance in 2017 and (2) when Linco sold its interest in June 2019.[1] It is a matter of public record, and this Court can take judicial notice of, that Unified Advance was administratively dissolved in 2018. DSMF ¶ 32. Thus, Linco allegedly suffered its loss almost 2 years after Defendants' alleged acts and omissions and almost 8 months after Unified Advance was dissolved. These further independent causes, and the temporal lapse between the alleged misrepresentations in 2017 and the loss in 2019, preclude any argument that the alleged misrepresentations in 2017 caused any loss with respect to Linco's contribution in Unified Advance. *See Caremark, Inc. v. Coram Healthcare Corp.,* 113 F.3d 645, 650 (7th Cir. 1997); *First Nationwide Bank.*, 27 F.3d 763 at 772; *Sapssov v. Health Mgmt. Assocs., Inc.,* 22 F. Supp. 3d 1210 (M.D. Fla. 2014), aff'd, 608 F. App'x 855, 1229 (11th Cir. 2015). As such, any acts or omissions by Defendants were not the cause of any loss, or proximate cause of Linco's damages, and summary judgment must be entered in favor of Defendants at to Counts I, III, and V with respect to the claims against Defendants involving Unified Advance.

### 3. Star Capital.

---

[1] With respect to Linco's contribution in Unified Advance, Linco alleged that it purchased its ownership interests approximately on March 27, 2017. DSMF ¶ 2 . Additionally, Linco alleged it purchased its portfolio investment in April 2017. ECF No. 59 ¶ 41. On June 4 ,2019, Linco sold its interests in Unified Advance by executing the Settlement Agreement and Release document, to which Linco alleges that it is no longer a member in Unified Advance. DSMF ¶ 35. Linco obtained $150,000 in the sale of Linco's Unified Advance interests. DSMF ¶ 35.

In November 2017, Linco obtained a membership interest in Star Capital by signing Amendment No. 1 to the Limited Liability Company Agreement of Star Capital Management, LLC ("**Star Capital Amendment**") and contributing $480,000.  DSMF ¶ 39.  Linco alleges it was told, in November 2017, prior to Linco signing the Star Capital Amendment, that the $1,158,000.00 next to the names of Gelman and Star Equities was an investment in cash.  DSMF ¶ 43.  Almost two years later, in September 2019, Linco sold its membership interest in Star Capital pursuant to the Class B Common Share Purchase Agreement, for $420,000.00.  DSMF ¶ 44.  Linco testified that the reason it sold its interest was that "The purpose was that Oleg Firer through Star Equities, was going to buy my shares out, to buy out my shares in the hotel."  DSMF ¶ 46.  Thus, as in the above instances, approximately two years transpired between Defendants' alleged acts and omissions with respect to capital contributions and Linco selling its interest in June 2019.  Linco voluntarily decided to sell its interest at a loss. The temporal lapse between the alleged misrepresentations in 2017 and the loss in 2019, and intervening act of Linco deciding to sell its interest at a loss, preclude any argument that the alleged 2017 misrepresentations regarding capital contributions caused any loss or damages to Linco.  *See Caremark, Inc. v. Coram Healthcare Corp.,* 113 F.3d 645, 650  (7th Cir. 1997); *First Nationwide Bank.*, 27 F.3d 763 at 772; *see also Sapssov v. Health Mgmt. Assocs., Inc.,* 22 F. Supp. 3d 1210 (M.D. Fla. 2014), aff'd, 608 F. App'x 855, 1229 (11th Cir. 2015). As such, any acts or omissions by Defendants were not the cause of any loss, or proximate cause of Linco's damages, and summary judgment must be entered in favor of Defendants at to Counts I, III, and V with respect to the claims against Defendants involving Star Capital.

**II.**     **THE OPERATING AGREEMENTS CONTRADICT LINCO'S ALLEGATIONS.**

A party may move for summary judgment, identifying each claim or defense--**or the part of each claim or defense**--on which summary judgment is sought. Fed. R. Civ. P. 56(a) (emphasis added). "Thus, summary judgment pertains to claims, defenses, and parts of claims or defenses." *Hooker v. McDonough*, No. 8:18-CV-2000-CEH-JSS, 2021 WL 2881507, at *3 (M.D. Fla. Mar. 28, 2021).

Part of Linco's claims in Counts I, III, and V arise out of alleged misrepresentations *in the operating agreements* of Unified Advance and EZ Capital as to the amount of capital contributions made by Gelman and Star Equities to Unified Advance and EZ Capital. In its depositions, Linco clarified that the amounts of capital contributions next to Gelman's and Star Equities' name on Exhibit A to the operating agreements of Unified Advance and EZ Capital (the "**Operating Agreements**") had been misrepresented in the Operating Agreements because Linco was told that such amounts were made exclusively in cash, and that Gelman and Star Equities had not in fact contributed such funds in cash. DSMF ¶¶ 16, 28. Linco's argument is not supported by the plain text of the Operating Agreements.

The Operating Agreements are substantially similar in relevant parts. DSMF ¶¶ 15, 26. Exhibit A to the Operating Agreements both expressly state "Capital Contributions and Initial Capital Account of the Member" in the column above the amounts next to the members' names. DSMF Exh. 1 at Exhibit A; DSMF Exh. 3 at Exhibit A. Both Operating Agreements state that "Capital Contribution" consists of "the total cash and Fair Market Value of other property contributed to the equity of the Company by a Member… ." DSMF Exh. 1 at ¶ 1.04; DSMF Exh. 3 at ¶ 1.04; DMSF ¶ 12; DMSF ¶ 29. Both Operating Agreements state that "Capital Account" means the Capital Account established for each Member and maintained in accordance with the provisions of this Agreement and the Regulations. DSMF Exh. 1 at ¶1.04; DSMF Exh. 3 at ¶1.04.

Both Operating Agreements state that that "The Members and Warrant Holders have made (or are deemed to have made) Capital Contributions with respect to Class A Units, Class B Units and Warrants in amounts reflected opposite each Member's name in Exhibit A and Exhibit B hereto… ." DSMF Exh. 1 at ¶ 3.03(a); DSMF Exh. 1 at ¶ 3.03(a); DMSF ¶ 13; DMSF ¶30.The Florida Revised Limited Liability Act ("LLC Act"), which governs here, defines "property" that forms part of a member's capital contribution as "all property, whether real, personal, mixed, tangible, or intangible, or a right or interest therein." Fla. Stat. § 605.0102 (56).

One part of Defendants' defenses to Linco's claims in Counts I, III, and V is that there was no misrepresentation because the Operating Agreements allowed contributions to be deemed to have been made as set forth in Exhibit A to the Operating Agreements. There is no genuine dispute of fact that the Operating Agreements state that "The Members and Warrant Holders have made (or are deemed to have made) Capital Contributions with respect to Class A Units, Class B Units and Warrants in amounts reflected opposite each Member's name in Exhibit A and Exhibit B hereto… ." SMF Exh. 1 at ¶ 3.03(a); DSMF Exh. 1 at ¶ 3.03(a); DMSF ¶ 13; DMSF ¶30. Pursuant to the Operating Agreements, the parties to the Operating Agreement could be deemed to have made the capital contributions in the amounts set forth on Exhibit A to the Operating Agreements.

Pursuant to Rule 56(a), the Court should enter summary judgment on part of Linco's claims in Counts I, III, and V, and Defendants' defenses thereto, and find that, facts are established without controversy, in that the Operating Agreements state that the amounts reflected opposite each member's name in Exhibit A to the Operating Agreements can be deemed to have been made by them, in the values identified therein, as set forth in paragraph 3.03 of the Operating Agreements.

### III.  LINCO IS NOT A DISSOCIATED MEMBER OF STAR CAPITAL.

Linco's claim in Count IV alleges a claim against Star Capital for Enforcement of Right of Inspection of Books and Records Fla Stat. § 605.0411 based on Linco's allegation that Linco is a dissociated member of Star Capital pursuant to Fla Stat.§ 605.0602. It is undisputed that Star Capital had no operating agreement aside from the Star Capital Amendment signed by Linco and Star Equities and Gelman. DSMF ¶¶ 39-42. Accordingly, to the extent that there is no contrary provision in the Star Capital Amendment, then the Florida Revised Limited Liability Company Act controls. Fla. Stat.§ 605.0105(2).

Star Capital's Amendment contains no provision identifying when a person is dissociated as a member. Exh. 5, Star Capital Amendment. Thus, Fla. Stat. § 605.0602 states the limited circumstances under which a person is dissociated as a member. Fla. Stat.§ 605.0105(2). One of those limited circumstances is when "[t]he company has notice of the person's express will to withdraw as a member… ." Fla. Stat.§ 605.0602 (1). While Fla. Stat.§ 605.0602 (5)(b) states that a transfer of interest, in one circumstance, can also result in dissociation, not all transfers of interest qualify as an event causing dissociation. Fla. Stat. § 605.0502(1)(b). Specifically, the statute states that "Subject to s. 605.0503 [which does not apply in this case], a transfer, in whole or in part, of a transferable interest . . . *[d]oes not by itself* cause a member's dissociation . . . ." Fla. Stat. § 605.0502(1)(b)(emphasis added). Additionally, on its face, Fla. Stat. § 605.0602(5)(b), does not apply to every instance where there is a transfer of interest because Fla. Stat. § 605.0602(5)(b) is premised on the condition that "[t]he person is expelled as a member by the unanimous consent of the other members if any of the following occur … ." *Id.* Fla. Stat.§ 605.0602 (1) and Fla. Stat.§ 605.0602 (5)(b) state separate causals, one cannot combine both statutes and allege that a company was on notice of a person's express will to withdraw as a member as a result of a transfer of interest. The reason for this is that if every transfer of a member's interest can be regarded as a "notice of

the person's express will to withdraw as a member" under Fla. Stat. § 605.0602(1), then Fla. Stat. §§ 605.0502(1)(b) ,605.0602(5)(b) would be meaningless, which cannot be the case. *United States v. Canals-Jimenez,* 943 F.2d 1284, 1287 (11th Cir. 1991) ("A basic premise of statutory construction is that a statute is to be interpreted so that no words shall be discarded as being meaningless, redundant, or mere surplusage.")

Linco's allegation that it is a dissociated member of Star Capital fails because it is undisputed that Linco did not "withdraw" as a member of Star Capital. Instead, Linco sold Linco's membership interest through a transfer of interest to Star Equities. DSMF ¶ 44. Linco attempts to shoehorn its way into being dissociated member by pleading that "Star Capital had notice of Linco's express will to withdraw as a member, as set forth in paragraphs 81-84." ECF No. 59 ¶ 120. But paragraphs 81-84 of the Amended Complaint in fact state that the Class B Common Share Purchase Agreement was a "sale of [its] interest in Star Capital." *Id.* ¶ 84. Linco admitted, during its deposition, that it sold its membership interest in Star Capital in September 2019 pursuant to the Class B Common Share Purchase Agreement. DSMF ¶ 46. There is no mention in the Class B Common Share Purchase Agreement of any notice or intent to withdraw. See DSMF Exh. 7. And there was no other mention of notice of intent to withdraw. DSMF ¶ 47. Thus, there was no action to "withdraw," and instead the executed Class B Common Share Purchase Agreement, is nothing more than a sale of non-voting membership interest between two members, and it neither expresses, nor represents, Linco that it is a notice of a member's withdrawal to Star Capital. *See Id.* As a matter of law, such a sale and transfer of interest does not qualify as an event causing dissociation. Fla. Stat. §§ 605.0502(1)(b), 605.0602. Accordingly, summary judgment is proper as to Linco's claim in Count IV because Linco is not a dissociated member of Star Capital.

## CONCLUSION

WHEREFORE, Defendants respectfully request this Court enter an order: **(1)** granting Defendants' Motion; **(2)** entering summary judgment in Defendants' favor and against Linco as to Linco's Counts I, III, and V; **(3)** entering summary judgment in Defendants' favor and against Linco as to part of Linco's claims in Counts I, III, and V, and Defendants' defenses thereto **(4)** entering summary judgment in Defendants' favor and against Linco as to Linco's claim in Count IV; and **(5)** granting such other and further relief as this Court deems just and proper.

Dated: August 16, 2021                    Respectfully submitted,

                                          **STARK WEBER PLLC**
                                          *Attorneys for Defendants*
                                          1221 Brickell Avenue
                                          Suite 900
                                          Miami, FL 33131
                                          Tel: (305) 377-8788
                                          steve@starkweber.com

                                          By:   s/Steven D. Weber
                                                Steven D. Weber
                                                Fla. Bar. No.: 47543

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this August 16, 2021, I served the foregoing document by the Court's CM/ECF portal on the following:

Sergiu Gherman, Bar No. 37031
sgherman@ghermanlaw.com
Gherman Legal Pllc
25 SE 2nd Ave. Ste. 808
Miami FL 33131-1603
*Attorneys for Linco*

BENNETT & AIELLO
3471 Main Highway, Suite 206
Coconut Grove, Florida 33133-5929
Phone: (305) 358-9011
paiello@bennettaiello.com
*Attorneys for Linco*

                                          Respectfully submitted,

s/Steven D. Weber