UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-22234-JEM/Becerra

LINCO ENTERPRISES, INC.,

    Plaintiff / Counter-Defendant,

v.

OLEG FIRER, EZ CAPITAL FUND, LLC,
STAR CAPITAL MANAGEMENT, LLC,
and STAR EQUITIES, LLC

    Defendants / Counter-Plaintiffs.

_____/

**REPORT AND RECOMMENDATION**
**ON PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES**

**THIS CAUSE** is before the Court on Plaintiff Linco Enterprises, Inc.'s ("Linco") Motion For Order That Strikes Certain Affirmative Defenses Or Deems Them To Be Denials ("Motion to Strike"). ECF No. [62]. Defendants Oleg Firer ("Firer"), EZ Capital Fund, LLC ("EZ Capital"), Star Capital Management, LLC ("Star Capital"), and Star Equities, LLC ("Star Equities") (collectively "Defendants"), filed their Response in Opposition to Plaintiff's Motion to Strike (the "Response"), ECF No. [71], and Plaintiff filed its Reply (the "Reply"), ECF No. [73]. Upon due consideration of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Plaintiff's Motion be **GRANTED IN PART AND DENIED IN PART**.

    **I.**    **BACKGROUND**

Non-party Sergey Khazarov ("Khazarov") is the sole owner and president of Plaintiff Linco. ECF No. [59] ¶ 2. In November 2016, Khazarov met non-party Gary Gelman ("Gelman") at a French airport while waiting to board a flight to New York City. *Id.* ¶ 11. Khazarov and

1

Gelman reconnected in December 2016 when Gelman invited Khazarov to dinner with Defendant Firer. *Id.* ¶ 12. After dinner and several times thereafter, the three men discussed various securities investment opportunities, including a "merchant cash advance business." *Id.* ¶ 13–16. Ultimately, Gelman helped Khazarov establish Plaintiff Linco, a Florida corporation that Khazarov would use to "invest substantial sums of money." *Id.* ¶ 17.

In March 2017, Khazarov, through Plaintiff Linco, invested $300,000.00 in Defendant EZ Capital for a five percent interest in the company and an additional $300,000.00 in non-party Unified Advance for a ten percent interest in the company. *Id.* ¶ 35. In both instances and pursuant to the operating agreements executed, Plaintiff Linco became a minority member without any management authority while Gelman along with Defendant Firer, through Defendant Star Equities (his investment company), were the majority members. *Id.* ¶ 35 n.4. Gelman and Defendant Firer assured Khazarov that they had previously invested $1.5 million each into Defendant EZ Capital and Unified Advance. *Id.* ¶ 36, 44. Thereafter, in April 2017, Khazarov, through Plaintiff Linco, made an additional $100,000.00 investment in Unified Advance. *Id.* ¶ 41. Moreover, in July 2017, Khazarov, through Plaintiff Linco, invested an additional $300,000.00 in Defendant EZ Capital; pursuant to the additional investment, the operating agreement was amended to reflect that Plaintiff Linco now held a ten percent interest in Defendant EZ Capital based on the additional capital investment. *Id.* ¶ 44.

Between July and November 2017, Gelman and Defendant Firer proposed an additional investment opportunity to Khazarov. *Id.* ¶¶ 52–54. Specifically, they proposed that Defendant Star Capital would acquire fifty percent ownership of a company referred to as "Star Development." *Id.* ¶ 47. In turn, Star Development would purchase land in Grenada wherein Defendant Star Capital would build a hotel. *Id.* Gelman and Defendant Firer assured Khazarov that this was an optimal investment opportunity because Star Development could acquire the land

significantly under market value. *Id.* ¶ 55. Pursuant to the representations and assurances made by Gelman and Defendant Firer, Khazarov, through Defendant Linco, made a $464,000.00 in Defendant Star Capital in exchange for a 16.6 percent interest in the company. *Id.* ¶ 62–63. Gelman and Defendant Firer, through Defendant Star Equities, assured that they had each invested $1,158,000.00 in exchange for a 42.5 percent interest each. *Id.* ¶ 63.

Plaintiff alleges that Gelman and Defendant Firer lied with respect to the investments, including regarding the capital contributions made by each, the operating agreements for the companies, and the companies' ownership of any assets. *Id.* ¶¶ 36, 64, 67, 71. Accordingly, Plaintiff filed the Amended Complaint containing six counts against Defendants: (1) Count I: Violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5 against Defendants EZ Capital, Star Capital, and Star Equities; (2) Count II: Liability of Controlling Persons, 15 U.S.C. § 78t against Defendant Firer; (3) Count III: Violation of Florida's Securities Investor Protection Act, Fla. Stat. § 517.011, *et seq.*, against all Defendants; (4) Enforcement of the Right to Inspect Books and Records, Fla. Stat. § 605.0411 against Defendant Star Capital; (5) Count V: Fraudulent Misrepresentation against all Defendants; and (6) Count VI: Judicial Dissolution of EZ Capital and Appointment of a Receiver, Fla. Stat. §§ 605.0702, 605.0703. *Id.* at 22–32. In response, Defendants filed their Answer and Affirmative Defenses. ECF No. [60]. Defendants assert twenty affirmative defenses.[1] ECF No. [60] at 9–17. Plaintiff requests that eight of those affirmative defenses be stricken or deemed denials. Specifically, Plaintiff contends that:

  a.  the Second Affirmative Defense (derivative not direct claim) should be stricken;

---

[1] Defendants' twentieth and twenty-first affirmative defenses are incorrectly numbered given the omission of a nineteenth defense.

  b.  the Third Affirmative Defense (knowledge), Eleventh Affirmative Defense (failure to state a cause of action), and Twelfth Affirmative Defense (no punitive damages) should be deemed denials;

  c.  the Seventh Affirmative Defense (not a dissociated member) should be stricken;

  d.  the Eighteenth Affirmative Defense (no loss causation) should be deemed a denial; and

  e.  the Twentieth Affirmative Defense (impossibility) and Twenty-First Affirmative Defense (commercial impracticability) should be stricken.[2]

ECF No. [62] at 3–8.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although the district courts are afforded broad discretion, striking is considered a drastic remedy that is often disfavored. *Birren v. Royal Caribbean Cruises, Ltd.*, 336 F.R.D. 688, 691 (S.D. Fla. 2020) (citing *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002)). As such, affirmative defenses should only be stricken if they are insufficient as a matter of law. *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) (citing *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976)). An affirmative defense is insufficient as a matter of law "if, on the face of the pleadings, it is patently frivolous, or if it is clearly invalid as a matter of law." *Id.* (quoting *Anchor Hocking Corp.*, 419 F. Supp. at 1000). In addition, a court should strike ambiguous affirmative defenses that do not respond to any count or allegation. ECF No. [73] at 3 (citing *Morrison*, 434 F. Supp. 2d at 1318).

---

[2] Plaintiff also sought to strike Defendants' First Affirmative Defense for failure to join an indispensable party. ECF No. [62] at 3. In their Response, Defendants assert that they "do not oppose striking this affirmative defense." ECF No. [71] at 2. Accordingly, Plaintiff's Motion as to the First Affirmative Defense should be **GRANTED**.

### III. ANALYSIS

#### a. Defendants' Second Affirmative Defense

Defendants' Second Affirmative Defense states:

> <u>Second Affirmative Defense – Derivative Claim Not Direct Claim</u>
> Linco's claims are barred in whole or in part because Linco's claims are derivative claims, not direct claims, and are wrongfully asserted as direct claims. Linco makes claims against Defendants that purport to allege wrongs against and harm suffered by all members of EZ Capital, Star Capital, and Unified Advance and not solely to and by Linco.

ECF No. [60] at 10. Plaintiff states that this affirmative defense should be stricken as legally insufficient. ECF No. [62] at 4. Specifically, Plaintiff states that it was damaged in the amount of $1,480,000, its total investment in the Defendant companies. *Id.* Plaintiff states that the damages alleged support a direct claim because they were incurred solely by Plaintiff Linco and not by and of the Defendant companies. *Id.* In response, Defendants argue that Plaintiff's allegations are, at their core, self-dealing and mismanagement claims that resulted in injury to Plaintiff and other members of the companies. ECF No. [71] at 5. As such, because Plaintiff does not allege an injury that is separate and distinct from that sustained by other members of the companies, the claims asserted are derivative in nature. *Id.*

Although the Parties go to great lengths in describing the law on derivative and direct claims, the Court notes that a motion to strike should not be used as an attempt to obtain judgment on the merits. *Achievement & Rehab. Centers, Inc. v. City of Lauderhill*, No. 2-61628-CIV, 2012 WL 6061762, at *1 (S.D. Fla. Dec. 6, 2012) ("Motions to strike should not be used to obtain a summary adjudication on the merits; the Federal Rules provide other mechanisms for achieving such ends."). As such, the Court declines to issue any opinion as to whether Plaintiff's claims are derivative or direct. Moreover, the Court notes that this has been raised, and can be more appropriately addressed, on summary judgement. *See* ECF No. [92] at 3–4. The Court focuses

only on the nature of the pleadings in finding that there is no basis to strike Defendants' Second Affirmative Defense because it is not patently frivolous or invalid as a matter of law. *See id.* (concluding that an affirmative defense that challenges standing is not frivolous or invalid as a matter of law). Specifically, because the Second Affirmative Defense raises substantial questions of law, it is more appropriately adjudicated following the appropriate factual development of this case. Therefore, Plaintiff's Motion as to the Second Affirmative Defense should be **DENIED**.

    **b. Defendants' Third, Eleventh, and Twelfth Affirmative Defenses**

Defendants' Third, Eleventh, and Twelfth, Affirmative Defenses state:

> Third Affirmative Defense – Knowledge
> Linco's claims are barred in whole or in part because before executing the Operating Agreement for EZ Capital and Unified Advance and making contributions, Linco represented and agreed that Linco was fully informed of the terms, contents, conditions and effects of the Operating Agreement of EZ Capital and Unified Advance; Linco relied solely and completely upon its own judgment in executing the Operating Agreements; Linco had the opportunity to seek and has obtained the advice of its own legal, tax and business advisors before executing the Operating Agreements; Linco acted voluntarily and of its own free will in executing the Operating Agreements; and the Operating Agreements was the result of arm's length negotiations conducted with Linco and its respective counsel.
>
> Eleventh Affirmative Defense – Failure To State A Cause Of Action
> Linco's claims fail to state a cause of action. There was no misrepresentations, omissions, or deception to Linco in connection with the sale of any securities, and any alleged misrepresentations, omissions, or deception were not the direct or proximate cause of any alleged damages to Linco.
>
> Twelfth Affirmative Defense – No Punitive Damages
> Punitive damages are barred because Defendants have at all times acted in good faith compliance with the law and there are no circumstances of fraud, malice, or willful and wanton conduct. Defendants have not engaged in any of the wrongdoing alleged in this case and Linco fails to state a cause of action.

ECF No. [60] at 10, 13. Plaintiff argues that these defenses, according to their substance, are merely denials and should be deemed as such. ECF No. [62] at 11. In response, Defendants argue

6

that the affirmative defenses allege new facts beyond those stated in the Second Amended Complaint, and as such, properly constitute a defense to Plaintiff's claim.  ECF No. [71] at 6–7.

An affirmative defense admits an allegation in the complaint "but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters."  *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013) (citing *Royal Palm Sav. Ass'n v. Pine Trace Corp.*, 716 F. Supp. 1416, 1420 (M.D. Fla. 1989)).  However, a defense that highlights a defect in the complaint or the lack of evidence in support of the allegation is not an affirmative defense.  *McMullen v. GEICO Indem. Co.*, No. 14-CIV-62467, 2015 WL 11199534, at *2 (S.D. Fla. Jan. 13, 2015) (citing *Royal Caribbean Cruises, Ltd. v. Jackson*, 921 F. Supp. 2d 1366, 1372 (S.D. Fla. 2013)).  As such, an affirmative defense that disputes the allegations stated in the complaint is more appropriately treated as a denial.  *Id.* (citing *Home Mgmt. Solutions, Inc. v. Prescient, Inc.*, 2007 WL 2412834, at *3 (S.D. Fla. Aug. 21, 2007)).

Here, as to the Third Affirmative Defense, the Court finds that this defense has been properly pled.  Specifically, although not labeled as such, Defendants essentially argue that Plaintiff is estopped from contesting the validity of the business arrangement between the Parties because Plaintiff had knowledge of the contents of the subject operating agreements and had the opportunity to seek an opinion from its own advisors.  This affirmative defense does not contest the elements of Plaintiff's claims, but instead, it properly provides a purported justification for the allegations made.  *See* Fed. R. Civ. P. 8(c)(1) (listing estoppel as an affirmative defense). Therefore, Plaintiff's Motion as to Defendants' Third Affirmative Defense should be **DENIED.**

The same argument does not apply to the Eleventh and Twelfth Affirmative Defenses.  In support of the validity of the Eleventh and Twelfth Affirmative Defenses, Defendants rely on *Confianca Mudancas E Transportes LTDA v. Confianca Moving, Inc.*, where the District Court noted that "[a]n affirmative defense is defined as [an] assertion raising new facts and arguments

that, if true, will defeat the plaintiff's or prosecutions claim, even if all allegations in the complaint are true." No. 09-21763-CIV, 2009 WL 10667442, at *2 (S.D. Fla. Dec. 23, 2009) (quoting *Green v. Amjak Enter., Inc.*, 2006 WL 2265455, at *2 (M.D. Fla. 2006)). In that case, the Court concluded that a "bare" request for attorneys' fees should be stricken because it did not "vitiate plaintiff's claims" and was not a "viable defense." *Id.* Unlike Defendants suggest, the holding in *Confianca* does not stand for the proposition that an affirmative defense survives if it merely states new facts that were not asserted in the complaint.

In this case, the Eleventh and Twelfth Affirmative Defenses should be stricken because they dispute Defendants' liability by pointing out defects in the Second Amended Complaint. Specifically, the Eleventh Affirmative Defense highlights defects in the Second Amended Complaint by emphasizing the lack of evidence in support of the claims asserted, stating that there were no misrepresentations, omissions, or deception, and as such, that Plaintiff is unable to state a claim for relief. Thus, although labeled as an affirmative defense, Defendants are in fact taking issue with Plaintiff's *prima facie* case such that the Eleventh Affirmative Defense is more appropriately deemed a denial. *See Bluewater Trading LLC v. Willmar USA, Inc.*, No. 07-61284-CIV, 2008 WL 4179861, at *2 (S.D. Fla. Sept. 9, 2008) (concluding that an affirmative defense, which provides that plaintiff has failed to state a claim, is in fact a denial).

As to the Twelfth Affirmative Defense, Defendants merely deny the allegations of the Second Amended Complaint because they state that Plaintiff cannot prove punitive damages, that they have not engaged in any wrongdoing, and that Plaintiff has failed to state a claim. Because the Twelfth Affirmative Defense provides that Plaintiff's claim fails on the facts alleged, it is simply not an affirmative defense but should instead be treated as a denial. As a result, Plaintiff's Motion as to the Eleventh and Twelfth Affirmative Defenses should be **GRANTED**, and those defenses should be deemed denials.

### c. Defendants' Seventh Affirmative Defense

Defendants' Seventh Affirmative Defense states:

> Seventh Affirmative Defense – Not A Dissociated Member
> Linco's claims are barred in whole or in part because Linco is not a dissociated member of Star Capital. Linco states Linco is a dissociated member because Star Capital had notice of Linco's express will to withdraw as a member. Linco did not seek to, and did not withdraw as, a member of Star Capital. Instead Linco sought to, and did, sell Linco's interest in Star Capital through the Class B Common Share Purchase Agreement.

ECF No. [60] at 11–12. Plaintiff argues that the Seventh Affirmative Defense is legally insufficient because Defendants admit to Plaintiff's dissociation from Defendant Star Capital and attempt to sell its interest in the company. ECF No. [62] at 13. As a result, Plaintiff submits that under Florida law, a member's transfer of its interest in limited liability company triggers dissociation from the company. *Id.* In the alternative, Plaintiff argues that the affirmative defense should be deemed a denial. *Id.* In response, Defendants argue that the provisions of the Florida limited liability company statute relied upon by Plaintiff are inapplicable here. ECF No. [71] at 8. Defendants further argue that their affirmative defense should not be deemed a denial because it properly introduces new facts, namely that Plaintiff sold its interest in Defendant Star Capital through the Class B Common Share Purchase Agreement. *Id.*

Here, as set forth above, the Court declines to reach a conclusion on the merits of this case. Therefore, whether Plaintiff dissociated from Defendant Star Capital is not an issue before the Court now. Instead, the Court focuses only on the sufficiency of the pleadings. Upon reviewing the Seventh Affirmative Defenses the Court finds that this defense is more accurately categorized as a denial. Defendants assert that Plaintiff's claims are barred because Plaintiff has not dissociated from Defendant Star Capital, as the Second Amended Complaint suggests. The Seventh Affirmative Defense does not admit the allegations or add any excuse or justification, instead it plainly contests the facts asserted by Plaintiff. Thus, Plaintiff's Motion should be **GRANTED IN**

**PART AND DENIED IN PART**. Although the Seventh Affirmative Defense should not be stricken, it should be considered a denial.

### d. Defendants' Eighteenth, Twentieth, and Twenty-First Affirmative Defenses

Defendants' Eighteenth, Twentieth, and Twenty-First Affirmative Defenses state:

> Eighteenth Affirmative Defense – No Loss Causation
> Linco's claims are barred in whole or in part by the doctrine of no loss causation as Defendants' alleged actions were not the proximate reason for Linco's alleged loss. First, Linco pleads that Linco could not allegedly sell the alleged unregistered securities at issue in this case, or there was no market for the alleged unregistered securities, and therefore suffered its loss complained of in this case. Additionally, due to the COVID-19 pandemic, Star Capital's assets suffered, which caused a loss to all members of Star Capital, and any loss for which Linco complains of in this case. Furthermore, VG Financing is the primary asset of EZ Capital. Due to the COVID-19 pandemic, the business of VG Financing suffered, and therefore EZ Capital suffered as well, and caused a loss to all members of EZ Capital, and any loss for which Linco complains of in this case.
>
> Twentieth Affirmative Defense – Impossibility
> Linco's claims are barred in whole or in part by the doctrine of impossibility. The COVID- 19 pandemic was totally unexpected and unforeseeable to Linco and Defendants, and Linco and Defendants did not provide for the risk of the COVID-19 pandemic in any of their dealings. Due to the COVID-19 pandemic, Star Capital's assets suffered which caused a loss to all members of Star Capital, which caused any loss for which Linco complains of in this case. VG Financing is the primary asset of EZ Capital. Due to the COVID-19 pandemic, the business of VG Financing suffered, and therefore EZ Capital suffered as well, and caused a loss to all members of EZ Capital, and any loss for which Linco complains of in this case.
>
> Twenty-First Affirmative Defense – Commercial Impracticability
> Linco's claims are barred in whole or in part by the doctrine of impossibility. The COVID- 19 pandemic was totally unexpected and unforeseeable to Linco and Defendants, and Linco and Defendants did not provide for the risk of the COVID-19 pandemic. Due to the COVID-19 pandemic, Star Capital's assets suffered which caused a loss to all members of Star Capital, and which caused any loss for which Linco complains of in this case. VG Financing is the primary asset of EZ Capital. Due to the COVID-19 pandemic, the business of VG Financing suffered, and therefore EZ

> Capital suffered as well, and caused a loss to all members of EZ
> Capital, and any loss for which Linco complains of in this case.

ECF Nos. [60] at 15–16.  First, Plaintiff argues that the Eighteenth Affirmative Defense should be treated as a denial because it merely contests the fraud allegations asserted.  ECF No. [62] at 7.  In addition, Plaintiff states that the Twentieth and Twenty-First Affirmative Defenses are duplicative of the Eighteenth Affirmative Defense to the extent that they attribute the companies' losses to COVID-19.  *Id.* at 14–15.  Moreover, Plaintiff states that the doctrines of impossibility and impracticability are excuses for non-performance under a contract, not defenses to the tort claim of fraudulent inducement.  *Id.* at 14.  In response, Defendants assert that the affirmative defenses are not denials because they assert new facts not included in the Second Amended Complaint. ECF No. [71] at 9.  Moreover, Defendants argue that COVID-19 was an intervening and superseding event that caused the losses suffered by Plaintiff.  *Id.* at 9–10.

In support of the Eighteenth Affirmative Defense, Defendants cite to three cases in which courts in other jurisdictions analyze the element of causation within the context of motions to dismiss.  *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994) (affirming the dismissal of fraud claim because the alleged misrepresentations were not the proximate cause of the injuries); *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 686 (7th Cir. 1990) (concluding that the plaintiff's claims were properly dismissed given their failure to allege loss causation); *Patel v. Patel*, 761 F. Supp. 2d 1375, 1381 (N.D. Ga. 2011) (granting motion to dismiss because the plaintiffs had not adequately alleged loss causation in order to state a 10b-5 claim). Defendants' reliance on cases that analyze causation as an element supports Plaintiff's position that the Eighteenth Affirmative Defense is merely an attack on the sufficiency of the allegations in the Second Amended Complaint.  Indeed, the Eighteenth Affirmative Defense does nothing more than contest Plaintiff's ability to prove its *prima facia* case, and as such, is more appropriately deemed a denial.  The Court, again, rejects Defendants' contention that the Eighteenth Affirmative

Defense is not a denial merely because it states new facts, as there is simply no support for that conclusion.  Therefore, as to the Eighteenth Affirmative Defense, Plaintiff's Motion should be **GRANTED** and the defense should be treated as a denial.

Moreover, as to the Twentieth and Twenty-First Affirmative Defenses, Defendants assert that Plaintiff's claims are barred based on the doctrines of impossibility and impracticability because the loss suffered by Plaintiff was caused by an intervening and superseding event, namely COVID-19.  ECF No. [71] at 9.  As an initial matter, there is no question that impossibility and impracticability are affirmative defenses.  *See Kolmat Do Brasil, LDTA v. Evergreen United Investments, LLC*, No. 14-81320-CIV, 2015 WL 11422291, at *3 (S.D. Fla. May 11, 2015) (noting that impossibility and impracticability are properly pled as affirmative defenses).  However, these doctrines only apply to excuse performance under a contract.  *See LSREF2 Baron, LLC v. Beemer & Associates XLVII, L.L.C.,* No. 3:10-CV-576-J-32JBT, 2011 WL 6838047, at *3 (M.D. Fla. Dec. 29, 2011) (defining impossibility and impracticability).  None of the claims asserted in this action are predicated upon a breach of contract theory, and as such, none are subject to contract defenses.  *See, e.g.*, *Weisler v. Safeco Ins. Co. of Illinois*, No. 14-CV-81107, 2015 WL 11281290, at *3 (S.D. Fla. Apr. 9, 2015) (concluding that affirmative defenses that relate to claims for breach of contract do not apply to tort claims).  Therefore, Plaintiff's Motion as to the Twentieth and Twenty-First Affirmative Defenses should be **GRANTED**, and the defenses should be stricken.

### IV.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Motion to Strike, ECF No. [62], be **GRANTED IN PART AND DENIED IN PART**.  Specifically, the First, Twentieth, and Twenty-First Affirmative Defenses should be **STRICKEN**, and the Seventh, Eleventh, Twelfth, and Eighteenth Affirmative Defenses should be **DEEMED DENIALS**.

## V.     OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on September 17, 2021.

_____
JACQUELINE BECERRA
United States Magistrate Judge